■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HOWARD J. WEMETTE, Appellant. [728 NYS2d 805] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Teresi, J.), rendered June 4, 1998 in Essex County, upon a verdict convicting defendant of the crimes of criminal contempt in the second degree, public lewdness (two counts) and harassment in the second degree.

Defendant was indicted on charges of criminal contempt in the first degree, criminal contempt in the second degree, endangering the welfare of a child, harassment in the first degree, harassment in the second degree and two counts of public lewdness stemming from several incidents which involved, *inter alia*, his May 28, 1997 appearances on the front porch of his home clad only in his socks. A neighbor, living directly across the street from defendant's house, videotaped defendant's behavior and contacted the police. Defendant was arrested on May 30, 1997. After his court appearance, a temporary order of protection was issued mandating that he have no contact with the complainant or her family. It was alleged in the indictment that defendant violated that temporary order and engaged in other behaviors constituting harassment. Following a jury trial, defendant was convicted of criminal contempt in the second degree, harassment in the second degree and both counts of public lewdness. He was sentenced to three concurrent 90-day jail terms on the convictions for public lewdness and harassment in the second degree, and three years' probation on the conviction for criminal contempt in the second degree.

Initially, defendant argues that it was improper for County Court (Halloran, J.) to deny his suppression motion without a hearing. Defendant alleged that the complainant was acting as an agent of the police and, therefore, was required to obtain a video surveillance warrant (*see*, CPL 700.05 [10]) before videotaping defendant. Even assuming defendant to be correct, his actions, captured on the videotape, occurred on his open front porch that was exposed to the plain view of the public and, therefore, there was no infringement of any reasonable expectation of privacy. Thus, his Fourth Amendment protections were not implicated (*see, e.g., Katz v United States*, 389

US 347, 351) and no warrant was required (*see,* CPL 700.05 [9]). Since defendant's sworn allegations did not, as a matter of law, support this ground for suppression, County Court did not abuse its discretion when it denied the motion without a hearing (*see,* CPL 710.60 [3] [b]; *People v Jones,* 95 NY2d 721, 725).

We next address defendant's argument that the videotape was improperly introduced into evidence. He contends that the tape was not a fair and accurate representation of what occurred because of the complainant's alleged use of the video camera's focus and zoom features and her starting and stopping the tape. Notably, "[t]he admissibility of photographic evidence which is relevant to prove or disprove a material issue is within the discretion of the trial court and such evidence 'should be excluded only if its sole purpose is to arouse the emotions of the jury'" (*People v Garraway,* 187 AD2d 761, 762, *lv denied* 81 NY2d 886, quoting *People v Pobliner,* 32 NY2d 356, 370, *cert denied* 416 US 905). Here, the complainant testified that the events depicted on the videotape were a fair and accurate representation of the things she saw with her unenhanced vision on May 28, 1997. That testimony provided an adequate foundation for the videotape's admission (*see, People v Garraway, supra,* at 762; *People v Fondal,* 154 AD2d 476, 476-477, *lv denied* 75 NY2d 770).

We turn to defendant's contention that Supreme Court abused its discretion when it prohibited defendant's proffered expert, Bruce Carlin, from giving his opinion as to whether the camera had been focused or the videotape edited. To be qualified as an expert, the witness must possess "'the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion rendered is reliable'" (*People v Burt,* 270 AD2d 516, 518, quoting *Matott v Ward,* 48 NY2d 455, 459). Although defendant established Carlin's undergraduate degree in mass media communications and his general experience in video production, he failed to demonstrate Carlin's training or prior experience in determining whether videotapes have been manipulated through focusing or editing. Therefore, we cannot say that Supreme Court abused its discretion in refusing to qualify Carlin as an expert in this specific area.

We also find no error in Supreme Court's direction that the videotape be presented to the jury without audio. The court determined that portions of the videotape were inaudible and would give rise to speculation as to what was being said. We note that Supreme Court offered defendant's counsel a "full opportunity" to cross-examine the complainant as to what she

said on the tape and thereby, presumably, permit introduction of specific portions of the audio to impeach her, but he chose not to question her in that regard.

Additionally, Supreme Court's *Molineux* ruling was proper. The People were permitted to introduce evidence of a bad act, allegedly occurring on April 20, 1998, when defendant was observed standing in his lighted living room window, masturbating, while facing the complainant's kitchen window at a time when she was in the kitchen. We find that this evidence was relevant on the charges of public lewdness with respect to the element of his intent to be observed (*see*, Penal Law § 245.00), on the harassment charges with regard to the element of intent to harass, annoy or alarm (*see*, Penal Law § 240.26) and to negate the possibility of accident or mistake concerning these charges. Furthermore, we find that its probative value outweighed its prejudicial effect (*see*, *People v Cook*, 93 NY2d 840, 841; *People v Alvino*, 71 NY2d 233, 242) and Supreme Court gave appropriate limiting instructions to the jury governing its admissibility during its final charge to the jury (*see*, *People v Shannon*, 273 AD2d 505, 507, *lv denied* 95 NY2d 892; *People v Murphy*, 235 AD2d 933, *lv denied* 90 NY2d 896). We also determine that Supreme Court was not required to hold a formal *Ventimiglia* hearing prior to its ruling. Rather, "[a]ll that is required is that the People alert the court and defendant of the 'prior crime' evidence intended to be introduced on their case-in-chief and identify some issue, other than mere criminal propensity, to which the evidence is relevant" (*People v Holmes*, 260 AD2d 942, 943, *lv denied* 93 NY2d 1020). Here, the procedure utilized complied with those requirements.

Turning to defendant's sentencing, we agree with his contention that the 90-day jail sentence imposed on the charge of harassment in the second degree was improper since it is a violation (*see*, Penal Law § 240.26) which carries a maximum sentence of 15 days in jail (*see*, Penal Law § 70.15 [4]). We also find that the three-year probationary term imposed on the conviction for criminal contempt in the second degree was illegal under Penal Law § 65.00 (1) and § 60.01 (2) (d). Probation is not an authorized disposition "where [the court] sentences a defendant for more than one crime and imposes a sentence of imprisonment for any one of the crimes" (Penal Law § 65.00 [1]; *see*, *People v Cerilli*, 80 NY2d 1016, 1018). In addition, if a jail term in excess of 60 days is imposed on a misdemeanor conviction, the court has no discretion to impose a period of probation (*see*, Penal Law § 60.01 [2] [d]). However, since defendant has completed the sentence imposed, this por-

tion of his appeal is moot and we find "no 'recurring issue of public interest which would otherwise escape appellate review'" (*People v Contrano*, 274 AD2d 760, 760-761, quoting *People v Anderson*, 197 AD2d 749, *lv denied* 82 NY2d 921; *see*, *People v Hamilton*, 214 AD2d 783).

We have considered defendant's remaining contentions and have found them to be either lacking in merit or unpreserved for review by appropriate objection.

Mercure, Crew III, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.